UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
EVANSVILLE DIVISION

| | |
|---|---|
| DR. CHRISTOPHER MANGER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CAUSE NO: |
| | ) |
| WABASH EM-I MEDICAL | ) |
| SERVICES, PC d/b/a ENVISION | ) |
| PHYSICIAN SVCS, | ) |
| | ) |
| Defendant. | ) |

**COMPLAINT AND DEMAND FOR JURY TRIAL**

**I. NATURE OF THE CASE**

1. This is an action brought by Plaintiff, Dr. Christopher Manger ("Dr. Manger"), by counsel, against Defendant, Wabash EM-I Medical Services, PC d/b/a Envision Physician Svcs. ("Defendant"), for violating the Americans with Disabilities Act ("ADA"), as amended, 42 U.S.C. § 12101 *et seq.* and for breach of contract.

**II. PARTIES**

2. Dr. Manger is a resident of the United States and the State of Indiana.

3. Defendant is a corporation that conducts business in the Southern District of Indiana.

**III. JURISDICTION AND VENUE**

4. Jurisdiction is conferred on this Court over the subject matter of this litigation pursuant to 28 U.S.C. §1331 and 42 U.S.C. §12117.

5. Defendant is an "employer" as that term is defined by 42 U.S.C. § 12111(5)(A).

6. Dr. Manger is a "qualified individual with a disability" as defined by the Americans with Disability Act, 42 U.S.C. §§ 12102(2) and 12111(8) and/or Defendant knew of Dr. Manger's disability and/or Defendant regarded Dr. Manger as being disabled.

7. Dr. Manger exhausted his administrative remedies by timely filing a Charge of Discrimination against Defendant with the Equal Employment Opportunity Commission and files this complaint within ninety (90) days of receipt of their Notice of Right to Sue.

8. Jurisdiction is conferred on Dr. Manger's state law claims pursuant to 28 U.S.C. §1367 because his state law claims arise from the same common nucleus of operative facts as his federal law claims and all of his claims form a single case and controversy under Article III of the United States Constitution.

9. A substantial part of the events, transactions, and occurrences concerning this case arose in the geographical environs of the Southern District of Indiana; therefore, venue is proper in this Court.

### IV. FACTUAL ALLEGATIONS

10. Dr. Manger was hired by the Defendant under an Employment Agreement to work as an Emergency Medicine Physician for King's Daughters' Health

Hospital in Madison, Indiana. A copy of the Employment Agreement is attached as Exhibit A. Dr. Manger began working under his contract in April 2021.

11.     During all relevant time periods, Dr. Manger met or exceeded Defendant's legitimate performance expectations.

12.     The Employment Agreement requires a notice period of 120 days to terminate the Agreement without cause. The Agreement also provides for termination of the Agreement for cause with written notice for breach of the Agreement.

13.     Dr. Manger worked on the frontline of the global fight against the COVID-19 pandemic since its inception in March 2020, and for nearly a year at King's Daughters at the time of his termination. Cp battled the war against COVID-19 often worrying about not having enough PPE to protect himself from the virus; sleeping in hotels, in isolation, in an effort to protect his family from the virus; agonizing over the prospect of running out of ventilators and having to withhold care from the dying; and witnessing patients fall ill and die.

14.     In December 2021, Dr. Manger's supervisor, the Medical Director of King's Daughters, Dr. Mark Charpentier ("Dr. Charpentier"), contacted Dr. Manger by telephone. In that conversation, Dr. Charpentier checked in with Dr. Manger, and Dr. Manger confided to Dr. Charpentier that he had been struggling with his mental health, especially after being scheduled to work nine (9) grueling shifts over eleven (11) straight days during the Christmas 2021 holiday season (108 hours total), with no sense of when the COVID-19 outbreak would crest.

15. Specifically, Dr. Manger expressly told Dr. Charpentier that he had been suicidal and therefore was worried about his mental health. While Dr. Charpentier offered to take Dr. Manger off of a few upcoming shifts, he also sharply replied to Dr. Manger, telling him "We are all struggling." Dr. Manger understood that based on this response, he needed to "grin and bear it," and he agreed to work his remaining scheduled shifts. Notably, at that time, despite putting Dr. Charpentier on notice that Dr. Manger was experiencing a disabling condition, Dr. Charpentier did not start the interactive process under the Americans with Disabilities Act, nor did he refer Dr. Manger to Envision Human Resources or any other resource for his disabling condition.

16. Subsequently, while Dr. Manger was working the night shift on January 5, 2022, Dr. Charpentier abruptly called Dr. Manger on the telephone and requested he take a breathalyzer because of a report from an anonymous call. Dr. Manger agreed and shortly thereafter, the CEO of King's Daughter, Kristie Whitlach ("Whitlach"), and a security officer, met Dr. Manger in a private room and administered the breathalyzer.

17. Dr. Manger blew a .04 in the breathalyzer, which was attributed to residual alcohol he had consumed during off-work hours prior to his shift. Ms. Whitlatch unequivocally stated, "Well, you seem fine to me, go ahead and work the rest of your shift." Adhering to the CEO's instructions and confirming he should return to work with Dr. Charpentier, Dr. Manger worked the remainder of his shift without incident.

18. Before the beginning of Dr. Manger's next shift (later that day at 7pm), Dr. Charpentier and the King's Daughters Regional Medical Director called Dr. Manger to inform him that they recognized he was an excellent physician but that they believed he needed help and that it would be in his best interests to take a leave of absence for treatment. During this conversation, Dr. Charpentier was unequivocal that Dr. Manger was not being terminated and that Envision wanted him to return. During that same call, Dr. Charpentier recommended that Dr. Manger contact the Indiana State Medical Association ("ISMA"), which referred him to Positive Sobriety Institute ("PSI") in Chicago, Illinois, for a medical evaluation and treatment. Dr. Manger obliged and sought an unpaid leave of absence and followed the direction of his supervisor.

19. Three days before Dr. Manger was expected to undergo an 8-week, medically necessary residential treatment program for his disabilities under the ADA – depression and alcohol abuse disorder – Envision contacted Dr. Manger by telephone to inform him that it was summarily terminating his employment effective immediately.

20. Envision claimed it was terminating Dr. Manger's employment under its no-tolerance drug and alcohol policy effective January 27, 2022 – nearly a month after Dr. Manger had undergone the breathalyzer test, been told to return to work, and then instructed to take a leave of absence to treat his disabilities.

21. Envision did not provide written notice of the intent to terminate Dr. Manger's Agreement as required by the Agreement.

22. The reason given for Dr. Manger's termination is pretext for discrimination based on his disability.

## V. Legal Allegations

### Count I: Disability Discrimination

23. Paragraphs one (1) through twenty-two (22) of Dr. Manger's Complaint are hereby incorporated.

24. Defendant violated Dr. Manger's rights as protected by the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* by failing to engage in the interactive process, failing to accommodate Dr. Manger's disabilities, and/or terminating his employment because of his disability.

25. Defendant's actions were intentional, willful and in reckless disregard of Dr. Manger's rights as protected by the ADA.

26. Dr. Manger has suffered and continues to suffer harm as a result of Defendant's unlawful actions.

### Count II: Breach of Contract

27. Paragraphs one (1) through twenty-six (26) of Dr. Manger's Complaint are hereby incorporated.

28. Defendant breached the Employment Agreement when it did not provide written notice of the intent to terminate Dr. Manger's Agreement.

29. Dr. Manger has suffered and continues to suffer harm as a result of Defendant's breach and unlawful actions.

## VI. REQUESTED RELIEF

WHEREFORE, Plaintiff, Dr. Christopher Manger, by counsel, respectfully requests that this Court find for Plaintiff and:

1. Reinstate Plaintiff to the position, salary and seniority level he would have enjoyed but for Defendant's unlawful employment actions, or award him front pay in lieu thereof;

2. Pay Plaintiff's lost wages and benefits;

3. Pay to Plaintiff compensatory damages, damages for emotional distress and payment of uncovered medical bills and/or insurance premiums;

4. Pay to Plaintiff punitive damages;

5. Pay to Plaintiff pre- and post-judgment interest;

6. Pay Plaintiff's costs and attorney fees incurred in litigating this action; and,

7. Provide any further equitable relief this Court sees fit to grant.

Respectfully submitted

/s/ Lauren E. Berger\
Lauren E. Berger, Atty. No. 29826-19\
BIESECKER DUTKANYCH & MACER, LLC\
411 Main Street\
Evansville, IN 47708\
Telephone:   (812) 424-1000\
Facsimile:    (812) 424-1005\
Email:          lberger@bdlegal.com

*Attorneys for Plaintiff, Dr. Christopher Manger*

## **DEMAND FOR JURY TRIAL**

The Plaintiff, Dr. Christopher Manger, by counsel, respectfully requests a jury trial for all issues deemed triable by jury.

Respectfully submitted,

/s/ Lauren E. Berger\
Lauren E. Berger, Atty. No. 29826-19\
BIESECKER DUTKANYCH & MACER, LLC\
411 Main Street\
Evansville, IN 47708\
Telephone:   (812) 424-1000\
Facsimile:    (812) 424-1005\
Email:          lberger@bdlegal.com

*Attorneys for Plaintiff, Dr. Christopher Manger*